**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **CardWare Inc.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. 7:24-cv-00278 |
| | § | |
| **Google LLC,** | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | |
| | § | |
| | § | |
| | § | |

**CARDWARE INC.'S COMPLAINT FOR PATENT INFRINGEMENT**

CardWare Inc. ("Plaintiff" or "CardWare"), by and through its undersigned counsel, brings this complaint against Google LLC ("Google" or "Defendant") to hold Google accountable for its infringement of CardWare's patented technology.  CardWare alleges as follows:

**INTRODUCTION**

1.      Plaintiff CardWare is a leading innovator in the payment ecosystem and has developed groundbreaking patented technology that provides enhanced security for payment transactions, both in-store using Near-field Communication Technology ("NFC") and online, to securely communicate limited-use payment information with the merchant.

2.      Among other functionalities, CardWare's patented solution facilitates secure payment transactions by using a limited-use payment information instead of the static, issued card details that leave card details vulnerable to interception by fraudsters.  CardWare's technology has been so innovative that it has resulted in a multitude of patents, including U.S. Patent Nos.

10,339,520 ("the '520 Patent"); 10,810,579 ("the '579 Patent"); 11,176,538 ("the '538 Patent"); and 11,620,634 ("the '634 Patent") (collectively, the "Asserted Patents").

3.      Google is a leading technology company and manufacturer of electronic and mobile devices, including smartphones and smartwatches.  Google Wallet and Google Pay are integrated into Google's electronic devices, including smartphones and smartwatches, making it easy for users to securely complete online transactions.  Google's smartphones and smartwatches also offer in-store, tap-to-pay functionality that relies on NFC technology incorporated into such devices,[1] enabling them to wirelessly communicate with nearby NFC-enabled payment terminals for secure, quick, and contactless payments.

4.      The fundamental security technology that underlies the success of Google's Google Pay and Google Wallet offerings was developed by CardWare and thus infringes the Asserted Patents.  This infringement has been willful, at least because CardWare put Google on notice of its infringement on or around October 10, 2023.

5.      With this action, CardWare seeks to recover damages and a reasonable royalty from Google for its use of CardWare's patented technology.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff alleges violations of federal law, namely, the Patent Act U.S. Patent Act, 35 U.S.C. §§ 1 *et seq.*

7.      This District has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within this District giving rise to this action; is present in and transacts and conducts business in this District and the State of Texas;

---

[1] PayPal, Tap to Pay, PayPal Money Hub, https://www.paypal.com/us/money-hub/article/tap-to-pay (last visited Oct. 21, 2024).

and transacts and conducts business with residents of this District and the State of Texas. This Court further has personal jurisdiction over Defendant pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*

8.      Defendant has infringed and continues to infringe the Asserted Patents, directly and through intermediaries, within this District and the State of Texas by making, using, selling, offering for sale, marketing, designing, and/or importing in or into this District and elsewhere in the State of Texas, its products and services covered by claims in the Asserted Patents, including without limitation products that, when made or used, practice the claimed methods of the Asserted Patents.  Defendant's infringement, as alleged above and further herein has been, at least since the filing of this action, willful and in disregard of the Asserted Patents, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

9.      CardWare's causes of action arise, at least in part, from Defendant's contacts with and activities in and/or directed at this District and the State of Texas.

10.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).  Google maintains regular and established places of business in this District and has committed acts of infringement in this District.

## **PARTIES**

11.      Plaintiff CardWare Inc. is a Texas corporation with its principal place of business located at 111 Congress Ave., Suite 500, Austin, Texas.[2]

12.      On information and belief, Defendant Google LLC is a Delaware corporation with one or more regular established places of business in this District, at least at 500 West Second Street, Austin, Texas, 78701; 601 West Second Street, Austin, Texas 78701; 901 East 5th Street,

---

[2] CardWare, Inc., "Contact Us," https://www.cardware.com/contact (last visited Oct. 21, 2024).

Austin, Texas 78701; 500 Chichon Street B, Austin, Texas 78702; 3601 South Congress Avenue, J-100, Austin, Texas 78704; 304 East 24th Street, Austin, Texas 78705; 845 Interchange Boulevard, Austin, Texas 78721; 6013 Technical Center Drive, Austin, Texas 78721; 4100 Smith School Road, Austin, Texas 78744; 807 Ruby Drive, Austin, Texas 78753; 10200 McKalla Place, Austin, Texas 78758; 2350 South Midkiff Road, Midland, Texas 79701; and 1100 West County Road, Midland, Texas.  Google may be served with process through its registered agent, the Corporation Service Company d/b/a/ CSC-Lawyers Inc., at 211 E. 7th Street, Suite 620, Austin, Texas 78701.  On information and belief, Google was first registered to do business in the State of Texas on November 17, 2006,[3] and has maintained offices in the State of Texas since at least 2007.[4] As of March 2024, Google had more than 1,400 employees in the Austin area.[5]

## RELEVANT FACTS

### I.    CARDWARE'S INNOVATIVE BUSINESS

13.    CardWare is an American firm founded by Mr. David Wyatt, a seasoned engineer and inventor with a track record of over 100 U.S. patents.  The company develops secure systems for electronic payments including dynamic tokenization systems that enhance the security of mobile and electronic payments.

14.    The company was originally founded in California in December 2011 but was later moved to Texas to be closer to Mr. Wyatt's personal residence in Austin and to jumpstart CardWare's growth.  Mr. Wyatt is the architect and driving force behind CardWare's payment

---

[3] *See* https://mycpa.cpa.state.tx.us/coa/search.do (search for "Google LLC" under "Entity Name") (last visited Oct. 21, 2024
[4] *See* Shonda Novak, *Google says it plans 'significant' Austin Expansion* , Austin American-Statesman (June. 14, 2019 11:40 a.m. CT), https://www.statesman.com/story/news/local/flash-briefing/2019/06/14/google-says-it-plans-significant-expansion-in-austin/4900532007/; *Google is Building New Data Center In Red Oak, Investing $330 Million This Year in Texas*, Focus Daily News (Aug. 31, 2003), https://www.focusdailynews.com/google-is-building-new-data-center-in-red-oak-investing-330-million-this-year-in-texas/.
[5] *See Google*, built in Austin, https://www.builtinaustin.com/company/google (noting that Google in Austin, TX had "1,486 Local Employees") (last visited Oct. 21, 2024).

technology.  Mr. Wyatt's expertise spans several technological areas, including the development of software application programing interfaces ("APIs") that integrate with payment systems and the design of physical cards for secure transactions.  His approach centers on creating highly secure, dynamic, and user-friendly solutions for modern payments, addressing consumer concerns about fraud and security.  His inventive contributions have helped CardWare provide groundbreaking innovations in the mobile payments market.

15.    CardWare's innovations include its SmartTokenization™ technology.  This technology enhances payment security by enabling payment cards with customizable features, such as generating one-time-use card information (replacing the issued card number and card verification value ("CVV")), setting custom expiration dates, or restricting usage to specific merchants, geographic locations, or payment amounts.  These features allow for tailored limits on transactions, adding an extra layer of protection for consumers.  The company's innovation addresses critical vulnerabilities in traditional payment methods—for in-store, card-present ("CP"), and online, card-not-present ("CNP"), transactions—which have been historically susceptible to theft through skimming and phishing.  CardWare has also developed and patented a numberless card that secures card details during in-store transactions preventing theft and fraud as compared to traditional credit cards that visually provide card details not only to the merchant but to anyone within reading distance of a presented card.

16.    Since moving to Texas, CardWare has hired new employees, presented at and sponsored payment industry events, and continued to innovate and file new patents.  For example, in September 2023, CardWare launched version 2.0 of its CardWare SDK,[6] which enables developers to leverage CardWare's secure payment technology in their own products.  In February

---

[6] SDK stands for "Software Development Kit."

2024, CardWare launched the Card+ App, through which users can manage and customize their wallet of payment cards, and conveniently perform more-secure online payments. In addition, CardWare offers physical smart cards for use with the CardWare™ SDK, in traditional plastic (Card+ Plastc™), recycled plastic (Card+ BioPlastc™), and metal (Card+ Metal™) forms.

17.     Overall, CardWare's technology has significantly advanced the market's understanding of payment systems and enhanced security and convenience for mobile transactions.

## II.     CARDWARE'S PATENTS

18.     CardWare is the exclusive owner by assignment of all rights, title, and interest in the Asserted Patents. Among other benefits, each of the Asserted Patents enhances payment security, and reduces if not eliminates the risk of fraud, for both in-store and online transactions.

19.     The '520 Patent, entitled "MULTI-FUNCTIONAL CREDIT CARD TYPE PORTABLE ELECTRONIC DEVICE" was duly and legally issued on July 2, 2019. A true and correct copy of the '520 Patent is attached hereto as **Exhibit A**.

20.     The '520 Patent has been in full force and effect since its issuance. CardWare is the exclusive owner by assignment of all rights, title, and interest in the '520 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '520 Patent.

21.     The '579 Patent, entitled "SMART TOKENIZING PAYMENT CARD AND DEVICE AND TRANSACTION PROCESSING THEREOF, SYSTEM AND METHOD" was duly and legally issued on October 20, 2020. A true and correct copy of the '579 Patent is attached hereto as **Exhibit B**.

22.     The '579 Patent has been in full force and effect since its issuance. CardWare is the exclusive owner by assignment of all rights, title, and interest in the '579 Patent, including the

right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '579 Patent.

23.     The '538 Patent, entitled "MULTI-FUNCTION SMART TOKENIZING ELECTRONIC PAYMENT DEVICE" was duly and legally issued on November 16, 2021.  A true and correct copy of the '538 Patent is attached hereto as **Exhibit C**.

24.     The '538 Patent has been in full force and effect since its issuance.  CardWare is the exclusive owner by assignment of all rights, title, and interest in the '538 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '538 Patent.

25.     The '634 Patent, entitled "MULTI-FUNCTION SMART TOKENIZING ELECTRONIC PAYMENT DEVICE" was duly and legally issued on April 4, 2023.  A true and correct copy of the '634 Patent is attached hereto as **Exhibit D**.

26.     CardWare is the exclusive owner by assignment of all rights, title, and interest in the '634 Patent, including the right to bring this suit for injunctive relief and damages, and including the right to sue and recover all past, present, and future damages for infringement of the '634 Patent.

### III.     GOOGLE'S INFRINGEMENT OF CARDWARE'S PATENTS

27.     CardWare restates and realleges the preceding paragraphs of this Complaint.

28.     Google manufactures, uses, tests, markets, offers, for sale, sells, and/or imports in or into the United States payment cards and electronic devices that are enabled with Google Pay and/or Google Wallet for making secure electronic payments.[7]

---

[7] *See, e.g.*, *Google Pay*, Google, https://pay.google.com/about/ (last visited Oct. 21, 2024); *Google Wallet*, Google, https://wallet.google/ (last visited Oct. 21, 2024).

29.     Hereafter, the term "Accused Products" refers to all products manufactured, used, tested, imported, or sold by or on behalf of Google that embody the systems and devices claimed by the Asserted Patents and all processes employed by Google that practice the methods claimed by the Asserted Patents, consisting of at least Google-branded electronic devices that support Google Pay, and/or Google Wallet, including by way of example and without limitation, Google Pixel smartphones and Google Pixel Watch smartwatches.

30.     On information and belief, Google has pre-loaded Google-branded electronic devices with Google Pay- and Google Wallet-related software prior to offering them for sale to customers, thus allowing their customers to utilize the infringing functionalities of Google Pay and/or Google Wallet immediately after purchase.   On information and belief, Google further pushed Google Pay- and Google Wallet-related software updates to purchased Google-branded electronic devices, thus allowing their customers utilize the infringing functionalities of Google Pay and/or Google Wallet to the extent that such functionalities were not available at their time of purchase.

## CAUSES OF ACTION

### IV.     FIRST CLAIM — INFRINGEMENT OF THE '520 PATENT

31.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

32.     Google has been on notice of the '520 Patent and a specific factual basis for its infringement of the '520 Patent since at least on or around October 10, 2023.

33.     Google has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, and continues to directly infringe, one or more claims, including without limitation at least claim 10 of the '520 Patent, by making, using, testing, selling, leasing, licensing, offering for sale, and/or importing into the United States the Accused Products.   An exemplary

claim chart concerning one way in which Defendant's Accused Products infringe claim 10 of the '520 Patent is attached hereto as **Exhibit E**.

34.     Google has also indirectly infringed, and continues to indirectly infringe, the '520 Patent under 35 U.S.C. §§ 271(b) and (c).

35.     Google has willfully, knowingly, and intentionally actively aided, abetted, and induced others to directly infringe at least claim 10 of the '520 Patent under 35 U.S.C. §§ 271(b) (such as its customers in this District and throughout the United States), and continues to do so, by, for example, selling, offering for sale, and encouraging its customers in this District and throughout the United States to use its Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. *See* Exhibit E.

36.     Google has contributed to, and continues to contribute to, the direct infringement of at least claim 10 of the '520 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '520 Patent, a material part of a claimed combination, where such material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Google Pay is a material part of the claimed combination and specifically designed and intended to facilitate storing and generating payment information on an electronic device, as claimed.  There are no substantial non-infringing uses of Google Pay other than as claimed in the '520 patent.

37.     Google has contributed to, and continues to contribute to, its customers' and/or other third parties' infringement because, with knowledge of the '520 Patent, Defendant supplied, and continues to supply, the technology that allows its customers to infringe the '520 Patent. *See* Exhibit E.

38.     Google's infringement of the '520 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others.

## V.     SECOND CLAIM — INFRINGEMENT OF THE '579 PATENT

39.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

40.     Google has been on notice of the '579 Patent and a specific factual basis for its infringement of the '579 patent since at least on or around October 10, 2023.

41.     Google has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, and continues to directly infringe, one or more claims, including without limitation at least claim 19 of the '579 Patent, by making, using, testing, selling, leasing, licensing, offering for sale, and/or importing into the United States the Accused Products.  An exemplary claim chart concerning one way in which Defendant's Accused Products infringe claim 19 of the '579 Patent is attached hereto as **Exhibit F**.

42.     Google has also indirectly infringed, and continues to indirectly infringe, the '579 Patent under 35 U.S.C. §§ 271(b) and (c).

43.     Google has willfully, knowingly, and intentionally actively aided, abetted, and induced others to directly infringe at least claim 19 of the '579 Patent under 35 U.S.C. §§ 271(b) (such as its customers in this District and throughout the United States), and continues to do so, by, for example, selling, offering for sale, and encouraging its customers in this District and throughout the United States to use its Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials.  *See* Exhibit F.

44.     Google has contributed to, and continues to contribute to, the direct infringement of at least claim 19 of the '579 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with

knowledge of the '579 Patent, a material part of a claimed combination, where such material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Google Pay is a material part of the claimed combination and specifically designed and intended to work on an electronic device with a processor and NFC interface, as claimed.  There are no substantial non-infringing uses of Google Pay other than as claimed in the '579 patent.

45.    Google has contributed to, and continues to contribute to, its customers' and/or other third parties' infringement because, with knowledge of the '579 Patent, Defendant supplied, and continues to supply, the technology that allows its customers to infringe the '579 Patent.  *See* Exhibit F.

46.    Google's infringement of the '579 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others.

## VI.    THIRD CLAIM — INFRINGEMENT OF THE '538 PATENT

47.    Plaintiff restates and realleges the preceding paragraphs of this Complaint.

48.    Google has been on notice of the '538 Patent and a specific factual basis for its infringement of the '538 Patent since at least on or around October 10, 2023.

49.    Google has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, and continues to directly infringe, one or more claims, including without limitation at least claim 19 of the '538 Patent, by making, using, testing, selling, leasing, licensing, offering for sale, and/or importing into the United States the Accused Products.  An exemplary claim chart concerning one way in which Defendant's Accused Products infringe claim 19 of the '538 Patent is attached hereto as **Exhibit G**.

50.    Google has also indirectly infringed, and continues to indirectly infringe, the '538 Patent under 35 U.S.C. §§ 271(b) and (c).

51.     Google has willfully, knowingly, and intentionally actively aided, abetted, and induced others to directly infringe at least claim 19 of the '538 Patent under 35 U.S.C. §§ 271(b) (such as its customers in this District and throughout the United States), and continues to do so, by, for example, selling, offering for sale, and encouraging its customers in this District and throughout the United States to use its Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials.  *See* Exhibit G.

52.     Google has contributed to, and continues to contribute to, the direct infringement of at least claim 19 of the '538 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '538 Patent, a material part of a claimed combination, where such material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Google Pay is a material part of the claimed combination and specifically designed and intended to provide for secure payment transactions, as claimed.  There are no substantial non-infringing uses of Google Pay other than as claimed in the '538 Patent.

53.     Google has contributed to, and continues to contribute to, its customers' and/or other third parties' infringement because, with knowledge of the '538 Patent, Defendant supplied, and continues to supply, the technology that allows its customers to infringe the '538 Patent.  *See* Exhibit G.

54.     Google's infringement of the '538 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others.

**VII.     FOURTH CLAIM — INFRINGEMENT OF THE '634 PATENT**

55.     Plaintiff restates and realleges the preceding paragraphs of this Complaint.

56.     Google has been on notice of the '634 Patent and a specific factual basis for its infringement of the '634 Patent since at least on or around October 10, 2023.

57.     Google has, under 35 U.S.C. §271(a), directly infringed, literally and/or under the doctrine of equivalents, and continues to directly infringe, one or more claims, including without limitation at least claim 1 of the '634 Patent, by making, using, testing, selling, leasing, licensing, offering for sale, and/or importing into the United States the Accused Products. An exemplary claim chart concerning one way in which Defendant's Accused Products infringe claim 1 of the '634 Patent is attached hereto as **Exhibit H**.

58.     Google has also indirectly infringed, and continues to indirectly infringe, the '634 Patent under 35 U.S.C. §§ 271(b) and (c).

59.     Google has willfully, knowingly, and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '634 Patent under 35 U.S.C. §§ 271(b) (such as its customers in this District and throughout the United States), and continues to do so, by, for example, selling, offering or sale, and encouraging its customers in this District and throughout the United States to use its Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. *See* Exhibit H.

60.     Google has contributed to, and continues to contribute to, the direct infringement of at least claim 1 of the '634 Patent under 35 U.S.C. § 271(c) by, for example, supplying, with knowledge of the '634 Patent, a material part of a claimed combination, where such material part is not a staple article of commerce and is incapable of substantial noninfringing use.  For example, Google Pay is a material part of the claimed combination and specifically intended to work on a

system with a processor and NFC interface, as claimed. There are no substantial noninfringing uses of Google Pay other than as claimed in the '634 Patent.

61.     Google has contributed to, and continues to contribute to, its customers' and/or other third parties' infringement because, with knowledge of the '634 Patent, Defendant supplied, and continues to supply, the technology that allows its customers to infringe the '634 Patent. *See* Exhibit H.

62.     Google's infringement of the '634 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others.

## TRIAL

63.     Pursuant to Federal Rule of Civil Procedure 38(b), CardWare hereby demands a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, CardWare prays for judgment against Google as follows:

A.     That Google has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe one or more of the Asserted Patents;

B.     That Google's infringement of one or more of the applicable Asserted Patents has been willful;

C.     That Google pay CardWare damages adequate to compensate CardWare for Google's past infringement of each of the Asserted Patents, and present and future infringement of the Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

D.     That Google pay CardWare prejudgment and post-judgment interest on the damages assessed;

E.     That Google pay CardWare enhanced damages pursuant to 35 U.S.C. § 284;

F.     That Google be enjoined from infringing the Asserted Patents, or if its infringement is not enjoined, that Google be ordered to pay ongoing royalties to CardWare for any post-judgment infringement of the Asserted Patents;

G.     That this is an exceptional case under 35 U.S.C. § 285; and that Google pay CardWare's attorneys' fees and costs in this action; and

H.     That CardWare be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

Dated: November 4, 2024                      Respectfully submitted,

                                             /s/ Eric H. Findlay_____
                                             Eric H. Findlay
                                             State Bar No. 00789668
                                             FINDLAY CRAFT, P.C.
                                             7270 Crosswater Avenue, Suite B
                                             Tyler, Texas 75703
                                             Tel: (903)534-1100
                                             Fax: (903)534-1137
                                             efindlay@findlaycraft.com

                                             Matthew G. Berkowitz
                                             Yue (Joy) Wang
                                             Navid C. Bayar
                                             Reichman Jorgensen Lehman & Feldberg LLP
                                             100 Marine Parkway, Suite 300
                                             Redwood Shores, CA 94065
                                             Tel: (650) 623-1401
                                             mberkowitz@reichmanjorgensen.com
                                             ywang@reichmanjorgensen.com
                                             nbayar@reichmanjorgensen.com

Caroline Walters
Khue Hoang
Patrick Colsher
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
cwalters@reichmanjorgensen.com

khoang@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com

*Attorneys for Plaintiff*