**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| CARDWARE INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00278-DC-DTG |
| | § | |
| GOOGLE LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.    STATEMENT OF FACTS ....................................................................... 2

III.    LEGAL STANDARD ............................................................................... 3

    A.    Subject Matter Eligibility Under Section 101 ...................................... 3

    B.    Courts May Determine Section 101 Patentability on a Rule 12(b)(6) Motion ........................................................................................... 4

IV.    ARGUMENT ............................................................................................ 4

    A.    Claim 19 of the '579 Patent Is Representative ..................................... 4

    B.    The Asserted Claims Are Invalid Under 35 U.S.C. § 101 ................... 6

        1.    Alice Step One: Representative Claim 19 is directed to the abstract idea of generating and using limited-use payment information ................ 6

            a.    Representative Claim 19 is focused on the purported claimed advance of generating limited-use payment information ................................................................... 6

            b.    Representative Claim 19 does not claim an improvement to computer technology .............................................. 10

            c.    Representative Claim 19 is similar to other claims that have been found to cover an abstract idea. ........................... 12

        2.    Alice Step Two: Representative Claim 19 lacks an inventive concept. ......................................................................... 14

            a.    The limitations of Representative Claim 19 recite generic computer components and broad, functional terms. .................. 15

            b.    The limitations of Representative Claim 19, individually or as an ordered combination, provide no inventive concept .......... 17

V.    CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ................................................................................7, 20

*Alice Corp. Pty. Ltd. v. CLS Bank. Int'l*,
   573 U.S. 208 (2014) ........................................................................................ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   967 F.3d 1285 (Fed. Cir. 2020) ...................................................................................18

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ...................................................................................12

*Ancora Techs., Inc. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) ...................................................................................11

*In re AuthWallet, LLC*,
   No. 2022-1842, 2023 WL 3330298 (Fed. Cir. May 10, 2023) ........................13, 14

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .....................................................................................4

*Bilski v. Kappos*,
   561 U.S. 593 (2010) .......................................................................................................4

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) ..............................................................................20

*Chewy, Inc. v. Int'l Bus. Machs. Corp.*,
   94 F.4th 1354 (Fed. Cir. 2024) ....................................................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................4, 5

*Cosmokey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
   15 F.4th 1091 (Fed. Cir. 2021) ....................................................................................11

*Diamond v. Diehr*,
   450 U.S. 175 (1981) .....................................................................................................19

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ................................................................................9, 10

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020) ...................................................................................13

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Elec. Power Grp. v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)........................................................................17, 19

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)........................................................................15

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)........................................................................11, 12

*Innov. Scis., LLC v. Amazon.com, Inc.*,
  778 F. App'x 859 (Fed. Cir. 2021) ...................................................................10, 13, 14

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017)........................................................................3

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)........................................................................15

*Internet Pats. Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015)........................................................................6

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012)............................................................................................15, 19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016)........................................................................10, 15

*Mobile Acuity Ltd. v. Blippar Ltd.*,
  110 F.4th 1280 (Fed. Cir. 2024) ......................................................................4

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016)........................................................................18

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)........................................................................4

*Smart Sys. Innovs., LLC v. Chi. Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017)........................................................................6

*Solutran, Inc. v. Elavon, Inc.*,
  931 F.3d 1161 (Fed. Cir. 2019)........................................................................13

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)........................................................................18, 19, 20

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016)..................................................................................3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)..........................................................................4, 19

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)...........................................................................4, 19

*Universal Secure Registry v. Apple, Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ...........................................................12, 13, 14, 19

*Yu v. Apple Inc.*,
  1 F.4th 1040 (Fed. Cir. 2021) ..................................................................................3

**Statutes**

35 U.S.C. § 101................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 4

# I.    INTRODUCTION

Patents cover *inventions*, not ideas.  Human creativity can envision all sorts of ideas—flying cars, perpetual motion machines—but that does not entitle those ideas to a patent.  Here, the asserted patent claims cover the *idea* of using a temporary credit card number in place of a real one.

Specifically, the focal point of the asserted claims is the idea of generating "limited-use payment information": a number that is used in place of the fixed credit card number.  But that is an abstract idea.  Looking past the claimed generic hardware components and functional limitations regarding authorizing the user, displaying payment options, and transmitting the payment information, the claims asserted here distill down to the basic notion of keeping a credit card number secure by using a temporary number in its place.  Indeed, as disclosed in the specification, the patent broadly covers different ways to encrypt fixed credit card information, which is the kind of idea that the Federal Circuit has repeatedly deemed abstract.

The asserted claims reflect no inventive concept that transforms them into patent-eligible subject matter—they recite nothing more than the use of generic computer components to perform routine, conventional payment steps in a typical and well-known order.  Indeed, the patent specifications explain that the steps of authorizing, storing, generating, and transmitting recited in the asserted claims are basic, conventional, and well-understood.  And because nothing in the asserted claims reflects *how* these steps achieve any purported improvement to the security of payment transactions separate from the abstract idea of swapping in a temporary credit card number, there is no inventive concept.

Defendant Google LLC ("Google") therefore respectfully requests dismissal of Plaintiff CardWare, Inc.'s ("CardWare") Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Asserted Claims are patent ineligible under 35 U.S.C. § 101.

## II.    STATEMENT OF FACTS

CardWare alleges infringement of U.S. Patent Nos. 10,339,520 (the "'520 Patent"); 10,810,579 (the "'579 Patent"); 11,176,538 (the "'538 Patent"); and 11,620,634 (the "'634 Patent") (collectively, the "Asserted Patents").  Dkt. 1.  The Asserted Patents are continuation patents in the same family, share a similar specification, and claim priority to Provisional Application No. 61/794,891, filed on March 15, 2013.[1]  CardWare has asserted infringement of Claim 10 of the '520 Patent, Claim 19 of the '579 Patent, Claim 19 of the '538 Patent, and Claim 1 of the '634 Patent (collective, the "Asserted Claims").  *Id.*

The Asserted Patents generally relate to devices, systems, and methods for conducting transactions with limited-use payment information.  *See, e.g.*, '579 Patent at 2:62–3:3.[2] "Effectively, embodiments of the present disclosure provide a credit card device that has no fixed number, and therefore the account cannot be compromised.  Only the number generated at the instant of the credit card transaction matters."  *Id.* at 10:49–53.  The limited-use payment information may be generated based on different inputs: the user's selected account, a timestamp, a transaction amount, an indicated merchant, user key or secrets, unique hardware secrets, credit card authority keys or secrets, user input, and other information associated with the transaction. *Id*. at 7:12–18.  The limited-use payment information may then be used in place of a user's fixed credit card number to make a payment, *id*. at 10:3–31, and may "be limited to only one transaction, a finite number of transactions, or [] a specified period of time—*e.g.*, 2 minutes, 10 minutes, 3 hours—after which time that particular limited-duration number would become invalid," *id.* at

---

[1] The '634 Patent is a continuation application of commonly owned U.S. Patent Application No. 17/075,637, now U.S. Patent No. 11,176,538, filed Oct. 2, 2020, which in turn was a continuation application of commonly owned U.S. Patent Application No. 16/459,150, now U.S. Patent No. 10,810,579, filed July 1, 2019, which in turn was a continuation application of commonly owned U.S. Patent Application No. 15/701,261, now U.S. Patent No. 10,339,520, filed Sep. 11, 2017.
[2] Corresponding language is found in the '520, '538, and '634 Patents.

10:19–23.  Notably, even the patent examiner summarily characterized the claims of the '634 Patent as comprised of steps for "generating and using limited-use payment information for performing a payment transaction."  *See* Notice of Allowance, Ex. 1 to Decl. of Matthias A. Kamber in Support of Defendant Google LLC's Motion to Dismiss ("Kamber Decl.").

## III.    LEGAL STANDARD

### A.    Subject Matter Eligibility Under Section 101.

To be patent eligible, a patent must claim a "new and useful, process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  "Abstract ideas" are not patentable. *Alice Corp. Pty. Ltd. v. CLS Bank. Int'l*, 573 U.S. 208, 216 (2014).  Patent eligibility under Section 101 is evaluated under the *Alice* two-part test.  Step one concerns "whether the claims at issue are directed to a patent-ineligible concept," like an abstract idea.  *Id*. at 218.  The Court ascertains "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter."  *Intell. Ventures I LLC v. Capital One Fin. Corp*., 850 F.3d 1332, 1338 (Fed. Cir. 2017) (citation omitted).  Step two determines whether the claims contain an "inventive concept" that "'transform[s] the nature of the claim' into a patent-eligible application."  *Alice*, 573 U.S. at 217–18 (citation omitted).  This requires "significantly more than a patent upon the [ineligible concept] itself."  *Id*. at 218.  "[M]ere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies] previously known to the industry.'"  *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d 607, 613 (Fed. Cir. 2016) (citation omitted).  A claim is ineligible if it "is recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea," and the "generic hardware limitations . . . merely serve as 'a conduit for the abstract idea.'"  *Yu v. Apple Inc*., 1 F.4th 1040, 1045 (Fed. Cir. 2021) (citation omitted).

### B.    Courts May Determine Section 101 Patentability on a Rule 12(b)(6) Motion.

Whether a patent covers patentable subject matter under Section 101 is a "threshold" question of law that should be answered early in a case. *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Invalidity under Section 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion . . . ." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). The Federal Circuit has confirmed that determining patent eligibility under Section 101 is appropriate at the pleadings stage. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) (affirming determination of patent-ineligibility under Section 101 at the pleading stage); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (affirming use of motions to dismiss).

## IV.    ARGUMENT

### A.    Claim 19 of the '579 Patent Is Representative.

It is Federal Circuit practice to analyze a "representative claim" under Section 101 when the asserted claims are substantially similar. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014) ("As the other claims of the patent are drawn to a similar process, they . . . need not be considered further."); *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290–91 (Fed. Cir. 2024) (noting that "District courts have discretion to ***require*** parties litigating Section 101 motions to identify representative claims and to articulate why (or why not) claims are representative"). Here, the Asserted Claims are substantially similar. Setting aside the recitation of generic and conventional computer components, these claims are linked to the same abstract idea of generating limited-use payment information for performing a payment transaction:

| Patent | Limitation |
|---|---|
| U.S. Patent No. 10,339,520 (17:24–29) | "**dynamically generating a one-time limited-use number** based on at least one of a set of information including: user-identifying information; user secrets; device information; device secrets; time; merchant; facility location; sequence count; payment information; account information; amount; and transaction information" |
| U.S. Patent No. 10,810,579 (25:17–19) | "responsive to receiving an NFC transaction payment request, **generating a limited-use payment information** for use in place of card issuer payment information" |
| U.S. Patent No. 11,176,538 (23:11–14) | "**generating at least one limited-use numbers** at said electronic device, and using said limited-use number in place of at least a portion of selected account issuer payment information" |
| U.S. Patent No. 11,620,634 (19:66–20:31) | "**dynamically generating, by the processor, limited-use payment information**; wherein said limited-use payment information is dynamically generated based on a per-transaction sequential parameter originating from the electronic device" |

The claims are also representative of one another because they recite substantially similar functional limitations:

- Claim 10 of the '520 Patent is directed to a method of storing and generating payment information for a payment transaction. '520 Patent at 17:8–33.

- Claim 19 of the '579 Patent is directed to an electronic device that implements a method of performing a payment transaction. '579 Patent at 24:65–25:24.

- Claim 19 of the '538 Patent is directed to a method of performing an online payment transaction. '538 Patent at 22:62–23:34.

- Claim 1 of the '634 Patent is directed to a method of generating and using limited-use payment information for a payment transaction. '634 Patent at 19:49–20:43.

Notwithstanding slight differences in emphasis and phrasing, the claims are substantially similar because they are each drawn to the abstract idea of generating limited-use payment information. *See Content Extraction*, 776 F.3d at 1348 (a claim is representative when all claims are

"substantially similar and linked to the same abstract idea"). Here, Claim 19 of the '579 Patent ("Representative Claim 19") will be treated as representative of the group.[3]

### B.    The Asserted Claims Are Invalid Under 35 U.S.C. § 101.

The Asserted Claims are patent ineligible because they are directed to the abstract idea of generating and using limited-use payment information. The Asserted Claims also lack an inventive concept that transforms the abstract idea into patent-eligible subject matter.

#### 1.    *Alice* Step One: Representative Claim 19 is directed to the abstract idea of generating and using limited-use payment information.

The first step of the *Alice* test requires determining whether the claim is directed to a patent-ineligible concept, such as an abstract idea. *Alice*, 573 U.S. at 218. This requires considering the claim in its entirety "to ascertain whether [its] character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

##### a.    Representative Claim 19 is focused on the purported claimed advance of generating limited-use payment information.

At its core, Representative Claim 19 is directed to making secure payment transactions by generating and using "limited-use payment information."

| '579 Patent – Claim 19 Limitations | Description |
|---|---|
| An electronic device comprising:<br>    at least one processor;<br>    a memory coupled to the at least one processor;<br>    a display operable to present a visual user-interface comprising device inputs; display output;<br>    a device input;<br>    an NFC interface operable to receive a transaction request when in proximity to an NFC recipient; | Generic computer components |

---

[3] Claim 10 of the '520 Patent, Claim 19 of the '538 Patent, and Claim 1 of the '634 Patent exhibit no "meaningful difference" from Claim 19 of the '579 Patent; they all disclose the same generic components and "performance of the same basic process" with only immaterial variations. *Smart Sys. Innovs., LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017). Thus, even if a different Asserted Claim from this group was selected as representative, the patent-eligibility analysis would be the same.

| '579 Patent – Claim 19 Limitations | Description |
|---|---|
| wherein the processor is operable to execute a program to implement a method comprising: | |
| accepting a priming action of the electronic device by an identified device user, from the device input; | Payment-authorizing actions |
| enabling the electronic device for imminent performance of a payment operation responsive to the priming action of a valid user; | |
| displaying a summary of selectable payment account options on the display; | |
| receiving a payment selection and approval authorization from a valid device user via the device input; and | |
| responsive to receiving an NFC transaction payment request, generating a limited-use payment information for use in place of card issuer payment information, | Generating limited-use payment-related information |
| wherein the NFC interface is operable to transmit said payment information from said electronic device to the NFC recipient of the transaction; and | Transmitting payment-related information |
| wherein further the processor is operable to cause the display to visually convey a status of the transaction. | Generic and conventional computer components |

In evaluating patent eligibility, courts look to "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (cleaned up). Here, that focus is the limitation regarding generating limited-use payment information. *See* '579 Patent at Abstract ("Methods are also described for generating a limited-duration credit card number when performing a transaction for the purpose of creating a limited-use credit card number, . . . ."). In fact, CardWare itself has characterized the Asserted Patents in much the same way: "CardWare's patented solution facilitates secure payment transactions by using a limited-use payment information instead of the static, issued card details that leave card details vulnerable to

interception by fraudsters." Dkt. 1 ¶ 2. As discussed further below, the other limitations simply reflect conventional payment transaction steps or generic computer components (*i.e.*, "processor," "memory," "display," "device inputs," "display output," "NFC (communication) interface"). The inclusion of such limitations does not make Representative Claim 19 any more patentable, just as the recitation of a steering wheel, windows, and wheels would not render a patent on the idea of a flying car patent eligible.

The abstract nature of Representative Claim 19 is evident in Figure 7 of the '579 Patent specification, which depicts an exemplary process for carrying out the claimed invention.



receive an input signal at a credit card device from a user enabling operation of a near-field communication (NFC) unit of the credit card device _701_

receive an indication of an amount of currency for a transaction _703_

generate, at the credit card device, an limited-duration credit card number _705_

transmit the limited-duration credit card number from the credit card device to a recipient of the transaction _707_

FIG. 7

Figure 7 reflects nothing more than the basic idea of making a payment by generating and transmitting limited-use payment information in place of a fixed credit card number. Specifically, the flow diagram illustrates a conventional process for making a payment (*i.e.*, a user selects a

credit card to make a payment, notes the amount of currency for the payment, and provides

payment information to a recipient of the transaction) by substituting in a "limited-duration credit

card number" for a fixed credit card number.

Furthermore, the specification's process for performing this substitution is itself abstract.

*See Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014). In

*Digitech*, the Federal Circuit deemed a claim abstract because it described a process of organizing

information through mathematical correlations.

> The [] claim recites a process of taking two data sets and combining
> them into a single data set, the device profile. The two data sets are
> generated by taking existing information—*i.e.,* measured chromatic
> stimuli, spatial stimuli, and device response characteristic
> functions—and organizing this information into a new form. The
> above claim thus recites an ineligible abstract process of gathering
> and combining data that does not require input from a physical
> device. As discussed above, the two data sets and the resulting
> device profile are ineligible subject matter. Without *additional
> limitations, a process that employs mathematical algorithms to
> manipulate existing information to generate additional information
> is not patent eligible.*

758 F.3d at 1351 (emphasis added). This closely resembles how the Asserted Patents describe the

process for generating limited-use payment information: "The limited-duration credit card number

is able to be generated according to the selected account, a timestamp, a transaction amount, an

indicated merchant, user key or secrets, on-card unique hardware secrets, credit card authority key

or secrets, user input from the card interface, and other information associated with the

transaction." '579 Patent at 7:12–18; *see also id.* at 10:7–9 ("The credit card device comprises a

real-time clock that is able to produce a cryptographically protected timestamp for each

interaction.") Because generating limited-use payment information encompasses the idea of

encrypting fixed credit card information by combining differing pieces of information (*e.g.,* a

timestamp), it is nothing more than an "algorithm[] to manipulate existing information to generate additional information."  As such, the idea is abstract, just like the idea in *Digitech*.

**b.**    **Representative Claim 19 does not claim an improvement to computer technology.**

Representative Claim 19 does not reflect any technological improvements; it simply claims using a computer as a tool for performing the claimed abstract idea.  Although it recites an electronic device with computer components, the claim is directed to performing a payment transaction and the computer components merely carry out the claimed functions.  Put another way, the claimed invention does not purport to improve the computer components on which the payment transaction is carried out.  Instead, it claims the idea of more securely performing payment processing.  *See McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.").

Representative Claim 19 recites functional, result-oriented language and provides no advancement to computer technology.  The claim requires no specific method for "priming" the electronic device (which is just an indicator of an imminent transaction), generating the "limited-use payment information," or transmitting the payment information.  *See* '579 Patent at 24:65–25:24.  Rather, the claim is written to cover using generic computer components to implement the abstract idea of generating limited-use payment information.  But claims reciting generalized steps of processing information, using nothing other than the conventional operations of generic computer components, are not patent eligible.  *See, e.g.*, *Innov. Scis., LLC v. Amazon.com, Inc*., 778 F. App'x 859, 864 (Fed. Cir. 2021) (finding invalid a claim that was directed to the abstract

-10-

idea of securely processing a credit card transaction with a payment server that recited merely functional and result-oriented steps).

Just because Representative Claim 19 purports to improve the security of payment transactions does not mean it represents an improvement to computer functionality. *Cf. Cosmokey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1098 (Fed. Cir. 2021) (disclosing "a technical solution to a security problem in networks and computers"). Again, Representative Claim 19 lacks any specific identification of improvements to computer functionality in an unexpected way; instead, it recites a combination of conventional components in a conventional way to achieve an expected result (*i.e.*, performing a payment transaction). And although improving security "can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem," *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), this case is different. In *Ancora*, the Court explained that the claimed method specifically identified how that

> functionality improvement is effectuated in an assertedly unexpected way: a structure containing a license record is stored in a particular, modifiable, non-volatile portion of the computer's BIOS, and the structure in that memory location is used for verification by interacting with the distinct computer memory that contains the program to be verified. In this way, the claim addresses a technological problem with computers: vulnerability of license-authorization software to hacking.

*Id*. at 1348–49 (finding method relies on specific and unique characteristics not previously used in the way now claimed). Here, in contrast, Representative Claim 19 fails to disclose any specific and unique characteristics not previously used in the way they are claimed. Accordingly, it is not patent eligible.

Similarly, in *Finjan, Inc. v. Blue Coat Systems, Inc*., the Federal Circuit determined that the claimed invention was not abstract because it was directed to a "behavior-based" virus scan

that could identify and compile unique information about potentially hostile operations, while the traditional scan method could only recognize the presence of previously identified viruses. 879 F.3d 1299, 1304 (Fed. Cir. 2018). Unlike in *Finjan*, the claimed invention here merely combines conventional payment transaction techniques—storing payment information, authorizing a valid user—with the abstract idea of generating and transmitting limited-use payment information to achieve an expected cumulative higher degree of security. Absent some unexpected result or improvement, claiming the idea of facilitating secure payment transactions is not patent eligible.

In sum, Representative Claim 19, as a whole, is directed to the abstract idea of generating and using limited-used payment information.

### c. Representative Claim 19 is similar to other claims that have been found to cover an abstract idea.

There is no universal definition of what constitutes a patent-ineligible abstract idea. The Federal Circuit has explained that "[i]nstead of a definition, then, the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen— what prior cases were about, and which way they were decided." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). Notably for purposes of this motion, the Federal Circuit has held similar claims involving payment-related transactions invalid under Section 101.

For example, in *Universal Secure Registry v. Apple, Inc*., the representative claim covered the use of a user device (*e.g.*, cell phone), a point-of-sale (POS) device, and a universal secure registry to facilitate financial transactions. 10 F.4th 1342, 1350–51 (Fed. Cir. 2021) ("*USR*"). The claim in *USR* required completing certain authentication processes before the user device generates encrypted authentication information (*i.e.*, requiring the user to be authenticated before allowing access to the device and account information). *Id*. The claim further recited that encrypted

authentication information be communicated for authentication through the POS device; if authentication was successful, the transaction and access to the user's account was permitted. *Id.* The Federal Circuit held that, under *Alice* step one, the claim was directed to an abstract idea because it recited "conventional actions in a generic way"—*e.g.*, authenticating a user using conventional tools and generating and transmitting that authentication—without "improv[ing] any underlying technology." *Id.* at 1352 (citing *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)).[4]

As another example, in *In re AuthWallet, LLC*, the patent was directed to a "computer-implemented method for processing financial transaction data" in which customers use "stored value items" when making a purchase. No. 2022-1842, 2023 WL 3330298, at *1 (Fed. Cir. May 10, 2023). The Federal Circuit noted that the claims were directed to a method for processing financial transaction data that implements authorization requests and recited "a secure transaction method where consumers can make credit card payments without physically presenting their cards." *Id.* at *3–4. The Court concluded that the claims were abstract and did not speak to specific or technical problems, but rather recited generic steps and results. *Id.*[5]

In addition, in *Innovation Sciences*, the Federal Circuit held invalid a claim directed to an improvement in an online payment processing system that allows merchants to overcome the

---

[4] At *Alice* step two, the Court found no inventive concept because the "encrypted authentication data" is merely a combination of known authentication techniques that yielded only expected results. *USR*, 10 F.4th at 1353 ("[A]s we have previously explained, verifying the identity of a user to facilitate a transaction is a fundamental economic practice that has been performed at the point of sale well before the use of POS computers and Internet transactions." (citing *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020))).
[5] At *Alice* step two, the Court found that the claims failed to recite an inventive concept that would transform the abstract idea into patentable subject matter because they merely recited well-known and conventional ways to perform authentication, a concept that is not inventive. *AuthWallet*, 2023 WL 3330298, at *4 (citing *USR*, 10 F.4th at 1355).

problem of inadequate security for the transmission of payment information. 778 F. App'x at 862–63. The Court explained that the at-issue claim was directed to the abstract idea of securely processing a credit card transaction with a payment server and recited steps that were merely functional and result-oriented. *Id*. (reciting claimed steps of receiving payment information, sending payment information, processing payment information, and sending payment confirmation).[6]

*USR*, *AuthWallet*, and *Innovation Sciences* all involved claims related to improvements to the security of payment transactions, including encrypting user authentication information (*USR*). Like the claims in those cases, Representative Claim 19 is broadly directed to the idea of improving the security of transactions by generating and using limited-use payment information in place of a fixed credit card number. And like the limitations at issue in *USR*, *AuthWallet*, and *Innovation Sciences*, Representative Claim 19 involves only functional, result-oriented steps performed with generic computer components, not any improvement to computer functionality itself; even the generation of limited-use payment information is disclosed as being accomplished through known encryption techniques (*e.g.*, using a timestamp), '579 Patent at 7:12–18; 10:7–9. Thus, Representative Claim 19 is directed to a patent-ineligible abstract idea.

### 2. *Alice* Step Two: Representative Claim 19 lacks an inventive concept.

Under *Alice* step two, one must examine the limitations of the claims to determine whether they contain an "inventive concept" sufficient to "transform" the abstract idea into patent-eligible subject matter. *Alice*, 573 U.S. at 221. The requisite inventive concept must be "more than merely implementing an abstract idea using 'well-understood, routine, [and] conventional activities

---

[6] At *Alice* step two, the Court held the claim lacked an inventive concept. *Innov. Scis.*, 778 F. App'x at 864 ("There is no inventive concept in the claim's use of a generic payment server 'to perform well-understood, routine, and conventional activities commonly used in industry.'" (citation omitted)).

previously known to the industry.'" *Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1356 (Fed. Cir. 2024) (citation omitted). That is, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice*, 573 U.S. at 221 (citation omitted). And those "additional features" must be more than "well-understood, routine, conventional activity." *Mayo Collab. Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79 (2012); *see also Alice*, 573 U.S. at 226. An inventive concept must be "an element or [ordered] combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible] concept' itself.'" *Alice*, 573 U.S. at 217–18 (citation omitted). Courts distinguish between patent claims that focus on "specific means . . . that improve[] the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO*, 837 F.3d at 1314. In other words, the claims must improve "the way [the] computer functions" or recite a "specific implementation of a solution to a [technological] problem." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320–21 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016). Representative Claim 19 fails because its limitations, individually or as an ordered combination, do not provide an inventive concept; neither the claim nor the underlying specification provides for implementing the abstract idea of limited-use payment information using anything other than existing, conventional technology.

a.    **The limitations of Representative Claim 19 recite generic computer components and broad, functional terms.**

Representative Claim 19 recites generic and conventional computer components (*i.e.*, "processor," "memory," "display," "device inputs," "display output," "NFC (communication) interface") and limitations that cover the functional steps of generating limited-use payment

information for performing a payment transaction. '579 Patent at 24:65–25:24. As to the generic computer components recited in the claim, nothing suggests that they are used or configured in anything but routine and conventional ways. As to the functional limitations, Representative Claim 19 does not claim *how* to implement the steps "accepting a priming action of the electronic device" (which, again, is simply an indicator of an imminent transaction); "enabling the electronic device for imminent performance of a payment operation"; "receiving a payment selection and approval authorization from a valid device user"; "generating a limited-use payment information"; and "transmit[ting] said payment information from said electronic device to the NFC recipient of the transaction." They are claimed functionally, and the specification confirms that they are meant to broadly cover the claimed functions rather than some particular, inventive way of accomplishing those functions.

For example, Representative Claim 19 recites a functional "priming" step that allows a user to begin performance of a payment operation. '579 Patent at 25:8–12. Based on the '579 Patent specification, the "priming action" can be a tap of a credit card device detected by accelerometers, a gesture, a swipe, or a key input received by a touch sensor array. *Id*. at 11:39–42. The priming action is an indication for a credit card device that a transaction is imminent. *Id*. at 13:25–28. Beyond that, however, Representative Claim 19 does not describe with any specificity how to implement the priming and enabling steps—the steps are written so as to only encompass their function and not limit their performance to any specific implementation.

The specification also explains that "limited-use payment information" can be any information used in place of a bank-issued payment number. *Id*. at 10:4–23. As discussed above, the '579 Patent specification discloses that a "limited-duration credit card number" can be encrypted based on combining different seed values: "the selected account, a timestamp, a

transaction amount, an indicated merchant, user key or secrets, on-card unique hardware secrets, credit card authority key or secrets, user input from the card interface, and other information associated with the transaction." *Id.* at 7:12–18.   The specification otherwise provides no instructions for how to use this information to generate a limited-duration credit card number, seemingly relying on the knowledge of one of skill in the art to be able to use unique seed values to perform an encryption operation.

Finally, Representative Claim 19 also has a limitation regarding transmitting payment information via an NFC interface.  '579 Patent at 25:20–22; *see also* 2:62–3:3 (discussing the NFC unit).  But as the specification of the '579 Patent makes clear, NFC interfaces were known at the time.  *See, e.g.*, *id*. at 10:64–11:1 (describing NFC as one type of connection means among USB, RFID, and NFC).  And nothing in the specification describes this function as anything more than the routine and conventional use of pre-existing NFC technology.  *See also Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (deeming claims ineligible under Section 101 in part because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

In sum, the features of Representative Claim 19 are conventional and do not describe any improvement to the relevant technology.

        **b.**    **The limitations of Representative Claim 19, individually or as an ordered combination, provide no inventive concept.**

As detailed above (*supra* § IV.B.1.a), Representative Claim 19 calls for performing the routine steps of authorizing, generating, and transmitting limited-use payment information for payment transactions on generic computer components.  But the payment steps themselves have been known for decades.  *See, e.g.*, '579 Patent at 1:29–2:3 (explaining the marketplace availability

of credit card devices with cryptographic processors and wireless transmission capabilities).  And there is no suggestion that the claim's generic components do anything beyond implementing conventional computer functions.  *See Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (explaining that "generic computer components . . . do not satisfy the inventive concept requirement.").  To the contrary, neither the claims nor the specification of the '579 Patent detail an improvement to the electronic device or generic computer components.  But a claim is not eligible for patent protection if it "does no more than require a generic computer to perform generic computer functions," and instead discloses equipment that is "purely functional and generic" and "offers [no] meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers."  *Alice*, 573 U.S. at 225–26 (citation omitted).

Moreover, as is also relevant to *Alice* step two, the claim fails to explain *how* to perform the payment transaction steps.  Representative Claim 19 does not address how the priming action is carried out; how the electronic device is enabled for imminent performance; how the payment selection and approval authorization are received; how the limited-use payment information is generated in place of card issuer payment information; or how the payment information is transmitted via the NFC interface.  *See* '579 Patent at 24:65–25:19; *see also Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2020) ("[F]eatures that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo*/*Alice* analysis."); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").  Without explanations distinguishing *how* the steps warrant finding the abstract concepts patent-eligible at step two, the functional claim limitations cannot

supply an inventive concept. *Elec. Power Grp.*, 830 F.3d at 1355 (finding claims fail step two inquiry because they do not explain how limitations are performed).

Nor does the ordered combination of limitations recited in Representative Claim 19 provide any inventive concept. Setting aside the intervening generation of limited-use payment information in place of a fixed card number, the claim recites facilitating a payment transaction via conventional steps in a conventional order—selecting a payment method, authorizing a payment, transmitting the payment information, and displaying the status of the transaction. These are conventional steps of making a payment in the expected order. Representative Claim 19's ordered combination of steps "adds nothing . . . that is not already present when the steps are considered separately." *Mayo*, 566 U.S. at 79. It supplies no inventive concept because it is "a conventional ordering of steps . . . with conventional technology to achieve its desired result." *Two-Way Media*, 874 F.3d at 1339. As noted in *USR*, "verifying the identity of a user to facilitate a transaction is a fundamental economic practice that has been performed at the point of sale well before the use of POS computers and Internet transactions." 10 F.4th at 1353.

In short, even assuming that the idea of limited-use payment information was novel (which Google disagrees with), novelty is not the touchstone of patent eligibility. *See Diamond v. Diehr*, 450 U.S. 175, 188–89 (1981) (explaining that "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining" patent eligibility); *Ultramercial*, 772 F.3d at 715 (rejecting the argument that "the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete"). So even if CardWare contends that its claimed use of limited-use payment information reflects some inventive concept over conventional methods of using a credit card to make a payment, that would conflate "the inventive concept inquiry with novelty." *Synopsys*, 839 F.3d at 1151. "[A] claim for

a new abstract idea is still an abstract idea." *Id.* Here, the "essential advance"—generating and using limited-use payment information in place of a fixed credit card number—"is abstract"; as such, "a novel method of performing that advance 'does not avoid the problem of abstractness.'" *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 892 (Fed. Cir. 2019) (quoting *Affinity Labs*, 838 F.3d at 1263).

Accordingly, Representative Claim 19 fails *Alice* step two. Without any inventive concept to transform the abstract idea into something significantly more, the claim is patent ineligible.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court grant this motion finding the Asserted Claims invalid under 35 U.S.C. § 101.

DATED:  January 27, 2025                     Respectfully Submitted,

By: */s/ Katharine Lee Carmona*
    Katharine Lee Carmona
    TX State Bar No. 00787399
    kcarmona@jw.com
    JACKSON WALKER LLP
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    Telephone:  (512) 236-2000
    Facsimile:  (512) 236-2002

    Nathaniel St. Clair, II
    Texas State Bar No. 24071564
    nstclair@jw.com
    JACKSON WALKER LLP
    2323 Ross Avenue, Suite 600
    Dallas, Texas 75201
    Telephone:  (214) 953-6000
    Facsimile:  (214) 953-5822

    Erica Benites Giese
    Texas State Bar No.  24036212
    egiese@jw.com
    JACKSON WALKER LLP
    1900 Broadway, Suite 1200
    San Antonio, Texas 78215
    Telephone:  (210) 978-7700
    Facsimile:  (210) 978-7790

    Robert W. Unikel (*pro hac vice pending*)
    robertunikel@paulhastings.com
    PAUL HASTINGS LLP
    71 S. Wacker Drive, Suite 4500
    Chicago, IL 60606
    Telephone:  (312) 499-6000
    Facsimile:  (312) 499-6100

    Matthias A. Kamber
    matthiaskamber@paulhastings.com
    PAUL HASTINGS LLP
    101 California Street, 48th Floor
    San Francisco, CA 94111
    Telephone: (415) 856-7000
    Facsimile: (415) 856-7100

Elizabeth L. Brann (*pro hac vice pending*)
elizabethbrann@paulhastings.com
PAUL HASTINGS LLP
4655 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Robert R. Laurenzi (*pro hac vice pending*)
robertlaurenzi@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  (212) 318-6000
Facsimile:  (212) 319-4090

James V. Razick (*pro hac vice pending*)
jamesrazick@paulhastings.com
Jason Mikus (*pro hac vice pending*)
jasonmikus@paulhastings.com
Puja V. Patel (*pro hac vice pending*)
pujapatel@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
Telephone:  (202) 551-1700
Facsimile:  (202) 551-1705

Attorneys for Defendant
GOOGLE LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of January, 2025, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system.

 */s/ Katharine Lee Carmona*
Katharine Lee Carmona

-22-